Rockingham
No. 99-428

FREDERIC MINER & a.

v.

A & C TIRE CO., INC. & a.

July 18, 2001

*Soule, Leslie, Kidder, Sayward & Loughman*, of Salem (*Diane M. Gorrow* on the brief and orally), for the plaintiffs.

*Casassa & Ryan*, of Hampton (*John J. Ryan* on the brief and orally), for the defendants.

BRODERICK, J. The defendants, Alden and Cheryl Illsley, owners of A & C Tire Company, Inc., appeal an order of the Superior Court (*Abramson*, J.) requiring them to cease and desist the operation of their commercial garage. We affirm.

The record supports the following facts. In 1967, the defendants began operating their business at its current location in the town of Atkinson (town). They sold, stored and changed tires, stored automobile parts, repaired automobiles and maintained an on-site office.

Between 1970 and the mid-1980s, the defendants improved their business property by building a shed, installing a trailer office, adding two bays to the existing garage, constructing a furnace room, installing a tire storage trailer, and building an outdoor concrete "pad" for automobile repair work. Between 1987 and 1988,

the defendants constructed an apron around the edge of the pad, enclosed and roofed a portion of the garage, installed a fence, and began using a dumpster for trash storage and removal.

In 1982 and 1983, respectively, the plaintiffs, Frederic and Susan Miner and Joseph Czarnecki, purchased properties located across the street from A & C Tire. At that time, the Miners understood that A & C Tire did its work inside the garage with the doors closed, and Czarnecki believed that the business was a two-bay tire shop that did no mechanical work.

When A & C Tire installed the concrete pad in 1984 to facilitate automobile repairs, the Miners complained to Mr. Illsley. He informed them that his use of the property pre-dated the zoning ordinances and that his garage operation was a lawful non-conforming use. The Miners accepted his representation.

In 1986 or 1987, when the Miners spoke to a town selectman about the expansion of the concrete pad, they were told that A & C Tire was not permitted to expand onto adjoining property. In 1988, when the Miners complained to the town in writing about the expansion, they were informed that the garage operation "pre-dated zoning" and that the business was not operating illegally. From this response, the Miners understood that A & C Tire could not expand its business and could not rent or lease property from its neighbor to do so. The plaintiffs also complained to the Illsleys and requested that the business be operated with the doors closed, that it not be expanded to adjoining property and that the noise from its operations be minimized.

In 1997, the plaintiffs wrote to the town once again, complaining about the operation of the business. At the time, the Illsleys were in the process of constructing an addition to the original garage. In response to the plaintiffs' complaint, the town required the Illsleys to get a building permit for work then in progress. Not fully satisfied, Mrs. Miner further investigated the lawfulness of the defendants' operations, and subsequently filed suit for a permanent injunction and damages.

The trial court granted the plaintiffs' request for an injunction, but refused to award damages. It ruled that the plaintiffs had standing to complain about the defendants' activities under RSA 676:15 (1996) and that the garage operation was not a lawful non-conforming use. The trial court rejected the defendants' estoppel claim because the plaintiffs had not made or concealed any representations of fact, and similarly discounted the defendants'

laches argument, finding that they failed to demonstrate any prejudice from the plaintiffs' delay in filing suit. While acknowledging that the defendants could seek a variance from the town, the trial court ordered that they cease and desist operating their business at its current location. This appeal followed.

The defendants contend that the trial court erred: (1) in finding that they had shown no prejudice from the plaintiffs' delay; and (2) by not balancing the equities before ordering them to cease and desist. The plaintiffs argue that the defendants did not present any evidence of prejudice at trial and that the trial court's order was lawful and reasonable.

The doctrine of laches is an equitable one and the trial court has broad discretion in deciding whether the circumstances justify its application. *See Healey v. Town of New Durham*, 140 N.H. 232, 241 (1995). Unless we find that the trial court's decision is unsupported by the evidence or erroneous as a matter of law, we will not overturn it. *See id.*

■ ■ Laches is not triggered by the mere passage of time, but may be appropriate where a suit has been unreasonably delayed and the delay has resulted in unfair prejudice. *See id.* "In determining whether the doctrine should apply to bar a suit, the court should consider the knowledge of the plaintiffs, the conduct of the defendants, the interests to be vindicated, and the resulting prejudice." *Id.* (quotation omitted). This inquiry "hinges upon the particular facts of each case." *Id.*

The trial court found that the plaintiffs had unreasonably delayed in bringing suit and had "slept on [their] rights." This finding was based on the fact that despite worsening noise and business expansion, the plaintiffs failed to timely contest the town's position that the garage was a pre-existing nonconforming use. The trial court found that "even a cursory reading of the 1959 zoning ordinance [would have] reveal[ed] that [the garage operation was] an illegal nonconforming use."

Despite finding unreasonable delay, the trial court concluded that laches did not bar relief because the defendants failed to show any prejudice from the delay. In their brief, the defendants argue that they will be forced to "terminate their business, fire their employees and render all of their business related improvements useless." The plaintiffs counter that there is no such evidence in the record, and because the defendants failed to advance this argument in the trial

court, they waived it. Alternatively, they assert that the trial court's order does not require the defendants to terminate their business or fire their employees, but only requires them to move their business to an appropriate Commercial-Industrial Zone or secure a variance.

■ "It is well established that this court will not consider issues raised on appeal that were not presented in the lower court." *State v. Bain*, 145 N.H. 367, 370 (2000) (quotations omitted). This requirement recognizes that the trial court should have "an opportunity to rule on issues and to correct errors before they are presented to the appellate court." *Id.* (quotation omitted). In this case, the record supports the trial court's finding that the defendants demonstrated no prejudice. None of the arguments advanced on appeal were presented to the trial court.

Furthermore, even if the defendants had proven below the prejudice they now allege, it would have been legally insufficient to support a claim of laches. The plaintiffs purchased their properties in 1982 and 1983. Most of the business improvements to the defendants' property were completed by that time. The defendants argue that the plaintiffs should have filed suit by 1988 at the latest. Assuming that to be true, virtually all of the improvements made to the defendants' property had been finished by then. Accordingly, the defendants' out-of-pocket expenses and the further prejudice they now claim would have been essentially the same in 1988 as today. Thus, the plaintiffs' delay in filing suit after 1988 did not further prejudice the defendants. In fact, the defendants benefited by being able to operate an illegal non-conforming use in a residential zone for several more years.

As laches is an equitable remedy for which the facts are carefully weighed, it is evident that in reaching its decision, the trial court balanced the equities. Therefore, we need not address the defendants' remaining argument that the trial court failed to balance the equities before issuing its cease and desist order. We decline to address the remaining arguments because they were not properly preserved for appellate review. *See State v. Colbert*, 139 N.H. 367, 370 (1995) (issues raised in notice of appeal but not briefed are deemed waived).

*Affirmed.*

BROCK, C.J., and NADEAU, DALIANIS and DUGGAN, JJ., concurred.