**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2020-0215, <u>In the Matter of Brian Whyte and Rebecca Whyte</u>, the court on February 26, 2021, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). The appellant, Brian Whyte, appeals an order of the Circuit Court (<u>Alfano</u>, J.) finding him in contempt for failing to pay child support on certain bonus income. On appeal, the appellant argues that the trial court erred by finding him in contempt because "it was reasonable for [him] to construe the court's orders as not requiring him to pay additional child support on the bonus received before the effective date of the final decree." Additionally, the appellant argues that, because the final divorce decree was inconsistent with respect to the amount of child support and alimony he was required to pay, the trial court erred by ordering him to pay the higher amounts. Lastly, the appellant argues that the trial court erred by awarding attorney's fees to the appellee, Rebecca Whyte. We reverse in part, vacate in part, and remand.

The pertinent facts are as follows. The parties were married in October 2001, and have two minor children. In September 2018, the trial court (Cross, R., approved by <u>Leonard</u>, J.) issued a temporary decree in the parties' divorce proceeding. Pursuant to the temporary decree, the parties were to continue living together in the marital home on an interim basis. The appellant was ordered to continue paying all of the housing expenses and most of the family's living expenses, and was also ordered to pay alimony to the appellee in the amount of $1,000 per month. He was not obligated to pay child support.

Following a hearing in January 2019, the trial court (Cross, R., approved by <u>Leonard</u>, J.) issued a final divorce decree on March 20, 2019. With respect to child support, the final decree stated:

> [The appellant] offers to pay <u>guidelines</u> child support, which he calculates as $511 per week. [The appellee] requests <u>guidelines</u> support, which she testified is $2,600 per month. The court finds that <u>guidelines</u> support is appropriate . . . . See accompanying Uniform Support Order. [The appellant] shall also pay additional child support on any income over his base salary . . . . If he receives bonuses or overtime in addition to his base salary, he shall, within 5 days of receiving that income, put the gross amount in the child

support guidelines worksheet and forward the appropriate payment to [the appellee] with a copy of his paystub and the guidelines worksheet.

The Uniform Support Order provides that the appellant is to pay $2,124 per month in child support, and that "[p]ayments on all ordered amounts shall begin on effective date of decree." With respect to alimony, the trial court ordered the appellant to pay "$1,367 per month for 30 months from the effective date of this Decree." In calculating that amount, the trial court accounted for the appellant's monthly child support obligation of $2,124, plus "additional support on his bonuses and overtime income," which, based on his average prior earnings, the trial court found amounted to an additional $629 per month. Elsewhere in the final decree and Uniform Alimony Order, however, the trial court set forth a different amount of alimony: $1,327.

On or about March 7, 2019, after the close of the evidence but prior to the issuance of the final decree, the appellant received an annual bonus in the approximate amount of $45,000. In June 2019, the appellee filed a petition for contempt, alleging that the appellant had violated the terms of the final decree by not paying additional child support on the bonus amount. Additionally, she requested nunc pro tunc review of the inconsistent child support and alimony awards set forth in the final decree, and observed that the appellant had been paying the lesser amounts. She noted the inconsistent alimony awards of $1,367 and $1,327, and also noted that the weekly child support amount of $511, when converted to a monthly amount by multiplying it by 4.33, does not equate to the $2,124 per month awarded by the trial court.

In February 2020, following a hearing, the trial court granted the appellee's contempt petition. The court found that the marital referee "was informed about and knew that [the appellant] was going to receive a bonus in March of 2019," and that "[t]he issue of that March bonus was addressed in the order." Accordingly, observing that the appellant "chose not to comply with the order" by not paying child support on the bonus, the trial court found the appellant in willful contempt. The trial court also granted the appellee's request for nunc pro tunc review, finding that the marital referee "stated in the narrative order that [the appellant] was ordered to pay child support of $511 per week, which is $2,214 per month. The [Uniform Support Order] erroneously says $2,124 per month." Further, the trial court found that the marital referee "stated in the narrative order that the Court awarded [the appellee] $1,367 per month in alimony for a period of 30 months. The Uniform Alimony Order erroneously states that the alimony award is $1,327 per month." Accordingly, the trial court ruled that "the higher numbers in the narrative order control and should be in effect going forward." The trial court denied the appellant's motion for

reconsideration, and granted the appellee's request for attorney's fees. This appeal followed.

We first address the appellant's argument that the trial court erred by finding him in contempt. He argues that because he received the bonus before the final decree became effective, and because the temporary order — which remained in force until the final decree became effective — did not require him to pay child support, "it was reasonable for [him] to construe the court's orders as not requiring him to pay additional child support on the bonus received before the effective date of the final decree." The appellee does not counter the appellant's argument, instead arguing that "[i]f [the appellant] received the substantial bonus after the effective date of the divorce, he is in contempt" for failing to pay child support on the bonus in accordance with the final decree. Alternatively, she argues, "if [the appellant] received the substantial bonus prior to the effective date of the divorce he will have . . . deprived the [appellee] of her fair share of a marital asset, which implicates fraud in the division of marital assets." We agree with the appellant.

"The contempt power is discretionary and the proper inquiry is not whether we would have found the respondent in contempt, but whether the trial court unsustainably exercised its discretion in [doing] so." In the Matter of Giacomini & Giacomini, 150 N.H. 498, 500 (2004). Here, the final divorce decree did not take effect until it was issued. See Fam. Div. R. 2.29 (providing that alimony and uniform support orders "are effective upon the issuance of the clerk's notice of decision, unless the court specifies, either orally or in writing, another effective date"); Gray v. Kelly, 161 N.H. 160, 167-68 (2010) (holding that a trial court order becomes effective on the date it is rendered unless a party files an appeal or obtains a stay). Because the appellant was not obligated to pay child support under the terms of the temporary divorce decree, and because the final divorce decree expressly provided that "[p]ayments on all ordered amounts shall begin on effective date of decree," the trial court unsustainably exercised its discretion by finding the appellant in contempt for violating an order that had not yet been issued, and which was not yet effective, when he received his bonus.

The appellee's alternative argument, that the bonus constitutes a marital asset to which she is entitled a 50% share, is not persuasive. "A property settlement in a divorce decree is a final distribution of a sum of money or a specific portion of the spouses' property and is not subject to judicial modification on account of changed circumstances. Such a property distribution will not be modified unless the complaining party shows that the distribution is invalid due to fraud, undue influence, deceit, misrepresentation, or mutual mistake." In the Matter of Birmingham & Birmingham, 154 N.H. 51, 57 (2006) (quotations, citation, and brackets omitted). Here, the appellee has failed to show fraud, undue influence, deceit, misrepresentation, or mutual mistake. In its

3

contempt order, the trial court expressly found that the marital referee "was informed about and knew that [the appellant] was going to receive a bonus in March of 2019," and that "[t]he issue of that March bonus was addressed" in the final divorce decree. The appellee does not challenge that finding, instead arguing that the appellant did not disclose the amount of the bonus. However, that argument does not amount to a showing of fraud, undue influence, deceit, misrepresentation, or mutual mistake — the appellant had not yet received the annual bonus at the time of the final divorce hearing, and both the final decree and the appellant's financial affidavit indicate that the amount of his annual bonus varies from year to year. Moreover, nothing in the record indicates that the trial court held the evidentiary record open following the conclusion of the final hearing, or otherwise ordered the appellant to supplement the record once he received his March bonus.

Next, the appellant argues that, because the final divorce decree was inconsistent with respect to the amount of child support and alimony he was required to pay, the trial court erred in its February 2020 order when it ordered him to pay the higher amounts. He contends that the trial court's interpretation of the final decree "lacks sufficient findings" to support its determination that the lower amounts were erroneous, and that the trial court's ruling on this issue "must be vacated and the matter remanded for further hearing." The appellee counters that the trial court sustainably exercised its discretion by correcting "mathematical and scrivener's errors, which were clearly mistakes." She contends that the court adopted the appellant's child support calculation, but, "instead of multiplying [the appellant's] weekly child support obligation of $511 by 4.333 to arrive at an accurate monthly figure of $2,214, the court instead stated that [the appellant's] child support payment would be $2,124 ($511 x 4)." Further, she argues that the trial court intended to award her alimony in the amount $1,367, and that the $1,327 amount set forth elsewhere was a scrivener's error.[1] We agree with the appellant.

The interpretation of a trial court order presents a question of law, which we review de novo. In the Matter of Salesky & Salesky, 157 N.H. 698, 702 (2008). Based on the record before us, which does not include the child support guidelines worksheet, we cannot definitively determine which set of numbers is correct. Although the appellee argues that the trial court adopted the appellant's

---

[1] The appellant's pending motion to strike portions of the appellee's brief is denied. The appellant contends that the appellee's "claims of scrivener's error and mathematical error" were not preserved, and are not properly before this Court. However, the burden to preserve issues for appellate review falls on the appellant, not the appellee. See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004) ("It is the burden of the appealing party . . . to demonstrate that she raised her issues before the trial court."). In any event, the appellee, in her petition for contempt and nunc pro tunc review, clearly raised the issue of the discrepancies in the trial court's child support and alimony awards.

child support calculation of $511 per week, and erred when it multiplied that figure by 4, instead of by 4.333, to convert it to a monthly amount, there are two flaws with her reasoning. First, $511 multiplied by 4 equals $2,044, not, as the appellee contends, $2,124 (the trial court's result). Second, and more importantly, it is not at all clear in the final decree that the trial court adopted the appellant's $511 figure as the correct child support guidelines amount. The trial court never said so expressly, and did not explain how it arrived at the $2,124 figure set forth elsewhere in the final decree. Although it is possible that the trial court inadvertently transposed the digits when calculating the monthly amount based on the $511 weekly figure, we cannot say so definitively without the guidelines worksheet or further factual findings. Further, even if the appellee is correct that the trial court intended to award child support in the amount of $2,214 per month, not $2,124 per month, the trial court plainly erred in its contempt order by failing to account for that correction when it ordered the appellant to pay the higher alimony award of $1,367 — an amount derived, in part, from the $2,124 child support award that the court found to be erroneous. Accordingly, given the lack of factual findings and sparse analysis to support the trial court's determination that "the higher numbers in the narrative order control," and given that that determination itself results in a mathematical error, we vacate the trial court's decision with respect to this issue, and remand for further findings of fact to resolve the inconsistencies in the final decree. See In the Matter of Clark & Clark, 154 N.H. 420, 426 (2006) (remanding issue regarding calculation of child support to trial court when resolution may require additional factual findings).

Lastly, the appellant argues that the trial court erred by awarding attorney's fees to the appellee. He contends that because "the finding of contempt must be vacated, it follows that the award of attorney fees must also be vacated." The appellee counters that the trial court properly found the appellant in contempt, and that, accordingly, the trial court did not unsustainably exercise its discretion when it awarded attorney's fees. See RSA 458:51 (2018) (providing that, in divorce cases, the trial court shall award attorney's fees to the prevailing party when the other party fails, without just cause, to obey a prior court order or decree). She also observes that the final divorce decree provides that "[a]ny party who unreasonably fails to comply with this Decree [or] other court Order may be responsible to reimburse the other for whatever costs, including reasonable attorney's fees, that may be incurred in order to enforce compliance."

"We review a trial court's award of attorney's fees under our unsustainable exercise of discretion standard, giving deference to the trial court's decision." Shelton v. Tamposi, 164 N.H. 490, 501 (2013). "To be reversible on appeal, the discretion must have been exercised for reasons clearly untenable or to an extent clearly unreasonable to the prejudice of the objecting party." Id. Here, the trial court's award of attorney's fees was premised upon its finding that the appellant

was in willful contempt.  Accordingly, because we reverse the trial court's contempt finding, the court's award of attorney's fees is not sustainable.

<u>Reversed in part; vacated in part; and remanded</u>.

Hicks, Bassett, Hantz Marconi, and Donovan, JJ., concurred.

**Timothy A. Gudas,**
**Clerk**